**Frederick HORNBERGER and Maureen Hornberger (h/w), Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civil Action No. 95–7333.**

United States District Court, E.D. Pennsylvania.

June 13, 1996.

Robert M. Silverman, Kimmel & Silverman, P.C., Blue Bell, PA, for Frederick F. Hornberger, Maureen A. Hornberger.

Hiliary L. Remick, McBreen, McBreen & Kopko, Philadelphia, PA, for General Motors Corporation.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Before this Court is Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs, Frederick and Maureen Hornberger ("the Hornbergers" or "Plaintiffs"), filed this action against Defendant, General Motors Corporation ("GM" or "Defendant"), alleging claims under the Magnuson–Moss Federal Trade Commission Improvement Act, the Pennsylvania Uniform Commercial Code, and Pennsylvania's Unfair Trade Practices Act, for losses due to alleged nonconformities and defects in a new 1993 Saturn SLI which Plaintiffs leased from a GM dealership. For the following reasons, Defendant's motion is granted in part and denied in part.

## STANDARD

■ Pursuant to Rule 56(c), summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Id.* at 324, 106 S.Ct. at 2553. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

## BACKGROUND

On September 9, 1992, Plaintiffs leased a new 1993 Saturn SLI from Saturn of Trevose ("Trevose"), a GM dealership. An express limited warranty was given to the Hornbergers. This limited warranty was provided by GM for three years or 36,000 miles. In addition, the warranty states the following:

> Saturn does not authorize any person to create for it any other obligation or liability in connection with these cars. **Any implied warranty of merchantability or fitness for a particular purpose applicable to this car is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. Saturn shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty.**

(Defendant's Summary Judgment Motion, Ex. C at 12.)

Plaintiffs presented their car on two occasions for warranty repairs during the term of the warranty. The first repair was at 6,491 miles. At such time, Plaintiffs asked that the fuel pressure regulator and/or gaskets be replaced. The second repair was performed at 7,889 miles and two recalls, Numbers 93–C04 and 93–C05, were performed. The recalls required the battery cable to be inspected and the generator wiring cable to be replaced.

On June 27, 1995, the car was towed to Saturn of Trevose, when the vehicle's odometer registered more than 40,000 miles. At that time, the car was towed in for transmission service because the converter housing had a hole in it at the output shaft and the output shaft bearing case was cracked, making the car inoperable. Prior to towing the car to Trevose for repair of the transmission, Plaintiffs sought repair from numerous independent repair shops based on Plaintiffs' belief that Saturn's express limited warranty

had expired. The estimated repair cost of said transmission is approximately $3,200.00.

On November 21, 1995, Plaintiffs filed the Complaint in this case, alleging claims under the Magnuson–Moss Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq., The Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 1101 et seq., and The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 et seq. On April 16, 1996, GM filed its Motion for Summary Judgment. Oral argument on Defendant's motion took place on May 30, 1996.

## DISCUSSION

In the instant action, Defendant argues that the Hornbergers' car was not brought to it for the repair of the transmission until after the 3 year/36,000 mile express warranty period had expired. In response, Plaintiffs do not dispute the expiration of the express warranty, but now proceed on a theory of an implied warranty of merchantability.[1] Here, a threshold issue arises as to whether the Pennsylvania Uniform Commercial Code warranty provisions apply to lease transactions.

The [Pennsylvania] legislature's enactment of Article 2A, which applies specifically to leases, has codified an area of the law that has heretofore not been fully addressed by the appellate courts of this Commonwealth. However, the provisions of Article 2A do not apply to the instant case as Article 2A did not become effective until July 9, 1993. See 13 Pa.C.S. § 2A102. Accordingly, ... the lease transaction in question [must be examined] to determine whether it is substantially similar to a sale of goods such that the

extension of the warranty provisions of Article 2 would be justified.

*Keblish v. Thomas Equipment, Ltd.,* 541 Pa. 20, 660 A.2d 38, 41 (Pa.1995).

Here, the lease of the GM Saturn is analogous to a sale, and therefore, the extension of Article 2's warranty provisions to this transaction is warranted. *See Cucchi v. Rollins Protective Services,* 524 Pa. 514, 574 A.2d 565, 570 (1990) (extending by analogy selected provisions of Article 2/Chapter 21 to transactions involving the lease of goods on a case by case basis); *Walnut Equipment Leasing Co., Inc. v. Moreno,* 643 So.2d 327, 332 (La.App.1994) ("Pennsylvania courts have found that the "warranty" and "waiver of warranty" provisions applicable to sales ... may be applied by analogy to leases."). The transaction in this case was a lease of an automobile for a duration of five years. The time frame in which the car remained in the Hornbergers' possession does give rise to expectations and obligations of one who commits to a long-term lease or an outright purchase where a transfer of title occurs. *Cf. Keblish,* 660 A.2d at 41. Accordingly, the warranty provisions of Article 2 extend to the lease transaction in this case.

## SCOPE OF IMPLIED WARRANTY OF MERCHANTABILITY

The main dispute between the parties centers on the parameters of the implied warranty of merchantability and whether the duration of its coverage may extend to the time when the transmission of the Hornbergers' car failed—at approximately 40,000 miles and almost three years after Plaintiffs leased the vehicle.[2] An implied warranty of

---

1. During oral argument, counsel for Plaintiffs informed this Court that the Hornbergers' current claims were limited to averring violations of the manufacturer's implied warranty of merchantability. (N.T. 5/30/96, pp. 2–3).

2. Defendant contends that to accept Plaintiffs' argument in this case would mean that an implied warranty of merchantability applies presumably forever. (N.T. 5/30/96 at 6). However, under Pennsylvania law, the limitations period applicable to breach of warranty actions accrues on, and suit must be filed within four years of, the date that the seller tenders delivery of the

goods, even if the alleged breach is not apparent until after delivery has been tendered. *Nationwide Ins. Co. v. General Motors Corp.,* 533 Pa. 423, 625 A.2d 1172 (1993). "While additional time may be permitted for express warranties that extend to future performance, implied warranty claims must be filed within four years of delivery." *Simons v. Mercedes–Benz of North America, Inc.,* 1996 WL 103796, *4 (E.D.Pa. March 7, 1996) (quoting *Nationwide,* 625 A.2d at 1178–79). *But cf. Cucchi,* 574 A.2d at 574 (holding that in a lease of goods transaction, the statute of limitations for a breach of either express or implied warranties under 13 Pa.C.S.A.

888

merchantability arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). To be merchantable, goods need only be of reasonable quality within expected variations and "fit for the ordinary purposes for which they are used." *See* 13 Pa.C.S.A. § 2314. "Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a 'safe condition' and 'substantially free of defects.' Thus, 'where a car can provide safe, reliable transportation[,] it is generally considered merchantable.'" *Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir.1989), *cert. denied*, 495 U.S. 904, 910, 110 S.Ct. 1923, 1936, 109 L.Ed.2d 287, 299 (1990) (citations omitted).

██ In this regard, Plaintiffs allege that they did not receive that which they leased, i.e., an automobile substantially free of material defects. Thus, a material question of fact does exist as to whether a normal transmission of a newly leased vehicle would fail after being driven approximately 40,000 miles, rendering the car unfit for the purpose of driving and, therefore, unmerchantable. *See Carlson*, 883 F.2d at 295 ("[T]he essence of plaintiffs' claim [is] that 'diesel engines[ ] are designed to and ordinarily do function for ... periods substantially in excess of th[ose] specified in GM's ... warranties'"). Such an allegation, that the Hornbergers' car was defectively manufactured or substandard in its construction or performance, precludes

this Court from granting GM's Motion for Summary Judgment on this issue.[3]

██ Defendant has cited *Nationwide Ins. Co. v. General Motors Corp.*, 533 Pa. 423, 625 A.2d 1172 (1993), for the proposition that the implied warranty of merchantability does not apply to future performance. (Defendant's Second Supplemental Memorandum at 5.) *Nationwide*, however, involved a purchase of a vehicle. With regard to lease transactions, the Pennsylvania Supreme Court has recently expressed its view "that the parties in a conventional lease of goods transaction presumably barter for the future performance of the goods." *Cucchi*, 574 A.2d at 574. *Cucchi* involved the application of Article 2's warranty provisions to a lease agreement for a burglar alarm system. The court held "that the express and implied warranties made by [the lessor] explicitly extended to the future performance of the burglar alarm system and that discovery of the breach of warranty, in that case, had to await the time of such performance." *Id.* While the precedential authority of *Cucchi* is limited to the facts of that case[4], the present action is sufficiently analogous on its facts such that *Cucchi* is applicable here. Based on the above, this Court concludes that the duration of an implied warranty of merchantability claim may extend beyond the limits of an express warranty to the time when a latent defect arises in an automobile.

### WARRANTY DISCLAIMERS

██ Although implied warranties can be disclaimed or modified, Plaintiffs argue that they had no conspicuous notice of any dis-

---

§ 2725 began to run at the time of discovery of the breach, rather than when the alarm system was installed).

3. This Court recognizes that Plaintiffs will have a very difficult path to hoe to establish their claim for breach of an implied warranty of merchantability. *See generally Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir.1986) ("[V]irtually all product failures discovered in automobiles after expiration of the [express] warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life."). However, this Court cannot hold as a matter of law that Plaintiffs' claim should be dismissed.

4. "Only two Justices joined in the opinion of the court. In a separate opinion, two Justices concurred in the result but expressed the view that § 2725 was inapplicable on the facts of the case. Three Justices dissented. The Supreme Court of Pennsylvania has recently written that '[b]ecause there was no clear majority supporting any given view, the precedential authority of *Cucchi* is limited to the facts of that case.'" *Simons v. Mercedes–Benz of North America, Inc.*, 1996 WL 103796, *4 n. 2 (E.D.Pa. March 7, 1996), (quoting *Keblish v. Thomas Equipment, Ltd.*, 541 Pa. 20, 660 A.2d 38, 40 n. 1. (1995)).

claimer of an implied warranty in their lease contract. *See Thermo King Corp. v. Strick Corp.*, 467 F.Supp. 75, 77 (W.D.Pa.1979), *aff'd*, 609 F.2d 503 (3d Cir.1979) ("[I]mplied warranties can be modified or excluded ...", in the case of a writing, by appropriate "conspicuous" language."). Conspicuousness is a question of law for the court. *Id.* "The test is whether a reasonable person against whom the modification or exclusion is to operate ought to have noticed it." *Id.;* UCC § 1201(10). Under Pennsylvania law, some characteristics to consider in determining whether a reasonable person should have noticed a disclaimer of warranty include: (1) the placement of the clause in the document; (2) the size of the disclaimer's print; and (3) whether the disclaimer was highlighted or called to the reader's attention by being in all caps or a different type style or color. *Moreno*, 643 So.2d at 333.

■ Here, Plaintiffs received notice of the implied warranty disclaimer from the warranty booklet, wherein the language at issue is the only writing throughout the 37–page booklet enclosed in a thick, dark-lined box. (Defendant's Summary Judgment Motion, Ex. C at 12.) While the warranty disclaimer appears in the middle of the booklet, the disclaimer is set forth in boldfaced print as compared to the remainder of the warranty language. Thus, this Court concludes, as a matter of law, that the language at issue is "conspicuous" such that the implied warranty

of merchantability was properly disclaimed pursuant to 13 Pa.C.S.A. § 2316(b).

■ Notwithstanding the allegations in the Complaint, Plaintiffs also argue that they did not in fact receive a warranty booklet at the time of contract.[5] Furthermore, Plaintiffs submit that they did not know that, by signing a warranty that was eventually delivered at the time of delivery of the vehicle, that they would be waiving their rights to an implied warranty of merchantability because it ran with the express warranty also in said booklet.[6] (N.T. 5/30/96, pp. 10–11).

Although Pennsylvania has not addressed this precise issue, other jurisdictions have held that a disclaimer contained in materials which are provided to the purchaser subsequent to the sale cannot relieve the manufacturer of the implied warranty of merchantability. In *Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1546–48 (11th Cir.1987), the court held that the post-sale disclaimer of implied warranties found in an instruction manual that accompanied a spray rig was ineffective because it did not form a part of the basis of the bargain. The court reasoned that the buyer could not be bound by the disclaimer to which he had never agreed at the time of the sale and which first appeared in an instruction manual that was included with the spray rig when it was delivered to the buyer, two weeks after the sale.

Warranty disclaimers and exclusions are not favored in the law and, therefore, to be effective, they must be exclusively negoti-

---

**5.** Defendant points out that in Plaintiffs' Complaint the Hornbergers have alleged the following: "In consideration for the lease of the above vehicle, Defendant issued to Plaintiffs several written warranties, including a three (3) year or thirty-six-thousand (36,000) mile warranty, as well as other standard warranties fully outlined in the warranty booklet, *delivered at time of sale.*" (Plaintiffs' Compl. at ¶ 8) (emphasis added). Thus, Defendant argues that there is an admission on record that is directly contrary to what Plaintiffs are presently claiming. (N.T. 5/30/96 at 10). However, Plaintiffs, during oral argument, did proffer Mr. Hornberger as a witness ready to testify for the record that he did not receive any notice of an implied warranty disclaimer at the time of contract. (N.T. 5/30/96 at 10).

**6.** Defendant contends that there is no competent claim as to unconscionability or after-sale deliv-

ery of the warranty because the lessor is a GM dealership, not the manufacturer. However, in this case, the car dealership is under the same corporate guise as the manufacturer and can be viewed as a conduit for the manufacturer's warranties. *See generally Ventura v. Ford Motor Corporation*, 180 N.J.Super. 45, 433 A.2d 801, 810 (1981) (explaining that a car dealership is the manufacturer's representative for the purpose of making repairs to the plaintiff's vehicle under the warranty). It should also be noted that under 13 Pa.C.S.A. § 2A531(a)(2)(iii), "[i]f a third party so deals with goods that have been identified to a lease contract as to cause actionable injury to a party to a lease contract: ... the lessee ... has a right of action against the third party if the lessee bears the risk of loss under the lease contract...." Thus, Plaintiffs do have standing to sue the manufacturer in this case, according to what Pennsylvania has adopted as law.

ated or bargained for. This requirement will assure that warranty limitations are brought to the attention of the buyer when the contract is made. For this reason, the prevailing rule is that a warranty limitation stated in printed matter given by the seller to the buyer after the sale is not binding. Likewise, when no disclaimer is made as a part of the oral sales contract, the buyer is not bound by a disclaimer which is stated in a clause of the printed warranty which is shipped or delivered to the buyer with the goods.

*Horizons, Inc. v. Avco Corp.*, 551 F.Supp. 771, 779 (W.D.S.D.1982), *modified*, 714 F.2d 862 (8th Cir.1983) (citations omitted). Thus, the time when Plaintiffs first received notice of GM's disclaimer of the implied warranty of merchantability is a genuine issue of material fact that precludes this Court from granting Defendant's Motion for Summary Judgment.

### *DISCLAIMER OF INCIDENTAL AND CONSEQUENTIAL DAMAGES*

■ The effectiveness of Defendant's disclaimer of incidental and consequential damages is governed by § 2719 of the Uniform Commercial Code. Plaintiffs argue that such a limitation is not binding because it was not disclosed prior to the agreement and agreed upon. However, "[u]nder Pennsylvania law, a limitation of damages may be imposed even if such a limitation was not expressly negotiated." *Florida Power & Light Co. v. McGraw Edison Co.*, 696 F.Supp. 617 (S.D.Fla.1988), *aff'd*, 875 F.2d 873 (11th Cir. 1989), (quoting *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751, 756 (3d Cir.1976)). Therefore, even though the Hornbergers contend that they did not negotiate the limitation provision, such a contention, alone, is insufficient to challenge the effectiveness of the provision.

Plaintiffs also argue that they can recover for breach of warranty because the Pennsylvania Commercial Code allows the buyer to pursue remedies under the Code where the exclusive remedy provided in the contract "fails of its essential purpose." *See* 13 Pa. C.S.A. § 2719(b). "A remedy fails of its essential purpose where it deprives either party of the substantial value of the bargain."

*Earl Brace & Sons v. Ciba–Geigy Corp.*, 708 F.Supp. 708, 710 (W.D.Pa.1989). Although Plaintiffs are correct in that the buyer may be relieved of its strictures if the limitation at issue fails in its essential purpose, such is not the case here.

In *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir.1976), a partnership engaged in production of documentary films brought an action against a film manufacturer, claiming that defects in film furnished by the manufacturer caused production delays and lost profits. During the liability portion of the trial, the defendant, Kodak, argued that the legend on each individually packaged roll of film, as well as each canister and box, limited damages to replacement of the film.

[T]he court on remand found that the defendant's exclusive remedy did not fail of its essential purpose because the risks associated with film are latent in nature. [*Posttape Assoc. v. Eastman Kodak Co.*] 450 F.Supp. [407] at 411 [E.D.Pa.1978]. The existence of unknown or undeterminable risks justifies using a limitation and provides a reason for a defendant to offer an exclusive remedy. *Id.* at 411–412. In such cases, a limited remedy operates exactly as intended and does not fail of its essential purpose. *Id.*

*Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F.Supp. 1196, 1199 (W.D.Pa.1992) (citations omitted).

■ Likewise, GM's exclusive remedy in this case does not fail of its essential purpose. To the contrary, as in *Posttape*, the clause does exactly what it was designed to do: limit the Hornbergers' remedy to performance of repairs and needed adjustments. "Like the film industry, [automobiles] involve latent risks." *Jim Dan*, 785 F.Supp. at 1200. Car Manufacturers limit damages because of the uncertainties inherent in the business. "Therefore, a [car] manufacturer's decision to limit damages merely allocates risks among the parties, and [the Hornbergers'] exclusive remedy does not fail of its essential purpose." *Id.*

■ Finally, the Hornbergers argue that GM's disclaimer of incidental and consequential damages is unconscionable and, thus, in-

effective.[7] "Like conspicuousness, unconscionability is a question of law." *Jim Dan,* 785 F.Supp. at 1200 n. 5. "The test of 'unconscionability' is two-fold. First, one of the parties to the contract must have lacked a 'meaningful choice' about whether to accept the provision in question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval v. Liberty Mut. Ins. Co.,* 366 Pa.Super. 415, 531 A.2d 487, 491 (1987), *alloc. dn.,* 518 Pa. 619, 541 A.2d 746 (1988) (citations omitted); *see also Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807, 810 (E.D.Pa.1981) ("Unconscionability may be expressed as the lack of meaningful choice coupled with a contract term which is so one-sided as to be oppressive."). "When the loss at issue is commercial, a limitation of remedy clause in a sale contract is not *prima facie* unconscionable." *Jim Dan,* 785 F.Supp. at 1200, *citing* 13 Pa.C.S.A. § 2719(c).

In *Moscatiello v. Pittsburgh Contractors Equip. Co.,* 407 Pa.Super. 363, 595 A.2d 1190 (1991), *alloc. dn.,* 529 Pa. 650, 602 A.2d 860 (1992), a highway contractor who had purchased a concrete paving machine brought an action against the dealer for breach of contract and breach of warranty. The court held that the limitations of remedies provision in the contract to sell the paving machine, prohibiting recovery of incidental and consequential damages, was unconscionable and unenforceable. In doing so, the court applied the following analysis:

> Parties to a contract rarely consciously advert to any number of terms which are binding upon them. If such terms allocate the risks of the bargain in a manner which the parties should have reasonably expected, they are enforceable—they are, to use the expression of Karl Llewellyn, decent terms. If the terms of the contract suggest the reallocation of material risks, an attempted reallocation may be so extreme that regardless of apparent and genuine assent, a court will not enforce it.... The parties will not be found to have agreed to an abnormal allocation of risk if the only evidence thereof is an inconspicuous provision on the boilerplate of a standard form. At a minimum, the reallocation must be physically manifested in a fashion comprehensible to the party against whom it is sought to be enforced. Finally, such party must have had a reasonable choice in relation to such reallocation.

*Moscatiello,* 595 A.2d at 1195 (quoting J. Murray, *Murray on Contracts,* § 353 (2d ed. 1974)).

The *Moscatiello* court reasoned that, in contrast to the defendant's skill at negotiating contracts for the purchase of such equipment, the highway contractor lacked prior experience and had no reason to expect that the contract he signed contained a clause which shifted to him the risk of economic loss resulting from his purchase of a machine which was incapable of performing the job that it was designed to do. In addition, the disclaimer was buried in fine print on the reverse side of the agreement.

■ In the instant action, as is *Moscatiello,* there is no evidence showing that the Hornbergers expected that the signed lease would contain a clause disclaiming any incidental and consequential damages or that they had a reasonable choice in relation to the reallocation of risk. Moreover, nothing in the record indicates that the Hornbergers are anything but consumers, in terms of education, business acumen and experience.[8] *Cf. Valhal Corp. v. Sullivan Associates, Inc.,* 44 F.3d 195, 203 (3d Cir.1995) ("Limitation of liability clauses are routinely enforced under

---

7. "Under section 2–719 parties may limit consequential damages providing the limitation is not unconscionable." *Florida Power,* 696 F.Supp. at 620, *citing* 13 Pa.C.S.A. § 2719(c).

8. This Court notes that "[t]he principle underlying a finding of unconscionability is to prevent oppression and unfair surprise, not to disturb the allocation of risks on the grounds of superior bargaining power. Indeed, "[the Supreme Court of Pennsylvania] and the federal courts in Pennsylvania ... have refused to hold contracts unconscionable simply because of a disparity in bargaining power." *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222, 1228 (1981). However, unequal bargaining power plays more of a factor in consumer transactions. *See Moscatiello,* 595 A.2d at 1196–1197; *see also Jim Dan* 785 F.Supp. at 1200 (explaining that negotiation of a clause limiting remedies is not necessary between *experienced* parties) (emphasis added).

the Uniform Commercial Code when contained in sales contracts negotiated between *sophisticated* parties....") (emphasis added); *Gershman v. Int'l Business Machines Corp.*, 619 F.Supp. 1530, 1533 (E.D.Pa.1985) (holding that the burden of proving unconscionability is greater in a commercial setting where the parties are assumed to be capable of looking out for their interests and less likely to be taken by surprise than unwitting consumers).

However, even if it is assumed that Plaintiffs lacked any "meaningful choice" in their dealings with GM on the issue of limitation of incidental and consequential damages, the question as to whether the remedy limitation clause "unreasonably favors" GM still remains. In *Posttape*, the court found that such a limitation was not unconscionable. In doing so, the court stated:

> the latent nature of film defects, the vast differences in use to which the film might be put, and the availability of an alternative form of protection lead us to conclude that the limitation of remedy is adapted to "the general commercial background and the commercial needs" of the film industry.

*Posttape*, 450 F.Supp. at 412.

A similar conclusion can be reached with regard to the automobile industry. In this case, the latent nature of automobile defects, the differences in use and how cars might be driven, and the availability of an alternative form of protection lead this Court to conclude that GM's limitation of the Hornbergers' remedy to performance of repairs and needed adjustments is not unconscionable. Thus, Defendant is entitled to summary judgment on the issue of limitation of damages because the clause contained in the lease does not unreasonably favor GM.