595 A.2d 1190

Franco MOSCATIELLO, i/a, t/d/b/a Moscatiello
Construction Company

v.

PITTSBURGH CONTRACTORS EQUIPMENT COMPANY,
a Subsidiary of Tri–State Machinery Distributors, Inc.,
Appellant,

v.

CURBMASTER, INC.

Superior Court of Pennsylvania.

Argued April 25, 1991.

Filed July 30, 1991.

364

Stacey F. Vernallis, Pittsburgh, for appellant.

Alan Berman, Pittsburgh, for Moscatiello, appellee.

David G. Klaber, Pittsburgh, for Curbmaster, appellee.

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

HESTER, Judge:

Pittsburgh Contractors Equipment Company ("PCEC") appeals from judgment entered on that portion of the order of August 21, 1990 entered in the Allegheny County Court of Common Pleas which denied the relief sought by PCEC in its post-trial motions. We find appellant's numerous allegations of trial court error to be without merit, and accordingly, we affirm the judgment.

This action arises out of a contract entered between appellant, PCEC, and appellee, Franco Moscatiello, i/a, t/d/b/a Moscatiello Construction Company ("Moscatiello"), for the purchase of a concrete paving machine ("paver") manufactured by Curbmaster, Inc. Approximately one month before the contract between PCEC and Moscatiello was executed in May, 1987, Franco Moscatiello and his superintendent, Jay Palino, met with the vice president of PCEC to discuss the purchase of the paver. At the time of the meeting, PCEC was aware that Moscatiello had been awarded a contract by the Pennsylvania Department of Transportation ("PennDot") to reconstruct a road, and that PennDot required that the concrete surface of the road be laid by a certain type of paving machine. The manufacturer of the paver, Curbmaster, also participated in these preliminary discussions. The vice president of Curbmaster had a telephone conversation with a representative of PCEC and Moscatiello in which he suggested that either of two machines manufactured by Curbmaster would be suitable for

the job and acceptable to PennDot. Reproduced Record ("R.R.") at 92–93a, 340–41a, 432a, 492a.

On or about May 19, 1987, Mr. Palino, Moscatiello's superintendent, executed a contract on a form provided by PCEC for the purchase from PCEC of a Curbmaster concrete spreader-finisher machine for a total price of $85,-125.42. PCEC's purchase agreement stated on the reverse side that no warranties were offered on equipment sold and that any implied warranties were excluded in favor of the manufacturer's offer of warranties. The contract also contained a provision which limited a buyer's remedy solely to return of the purchase price, less wear and use of the machine. In addition, all consequential and incidental damages were expressly excluded.

Moscatiello had no previous dealing with PCEC and was not on notice that the sales agreement relinquished warranties and limited damages. During the contract negotiations, neither PCEC's vice president nor the salesman in attendance directed Moscatiello's attention to the reverse side of the contract where the warranty exclusions were printed.

The paver was manufactured by Curbmaster at its plant in Iowa and shipped to Pittsburgh, arriving at Moscatiello's job site on June 15, 1987. When the paver arrived, it contained no warranty information from the manufacturer. It was alleged during trial that Curbmaster's warranty information was attached to Curbmaster's operations and parts manual, which was delivered to PCEC following execution of the sales contract between Curbmaster and PCEC. However, the trial court found that the manual which ultimately was delivered to Moscatiello did not contain Curbmaster's warranty exclusions and disclaimers. A Curbmaster employee was present when the paver arrived, assisted Moscatiello employees in assembling it, instructed Moscatiello employees on how to operate the machine, and was present when the machine was used for the first time. The Curbmaster representative never informed Moscatiello

employees that the machine's warranties were limited or excluded.

According to the testimony of four witnesses during trial, from the time it was first used in June, 1987, to on or about November 12, 1987, when it was used last, the paver failed to lay concrete evenly. Furthermore, the product which resulted was unacceptable to PennDot. During the five-month period of the paver's operation, Moscatiello made numerous complaints to PCEC about the paver's failure to produce an acceptable product. During this period, PCEC and Curbmaster unsuccessfully attempted numerous times to remedy the defects in the machine. The machine finally was returned to Curbmaster in December, 1987. As a result of the paver's failure to perform its functions properly, Moscatiello incurred increased labor costs in order to produce a product acceptable to PennDot.

On February 8, 1988, Moscatiello filed a complaint against PCEC asserting breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. PCEC joined Curbmaster as an additional defendant, asserting breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, and negligence. By agreement of the parties, PCEC dismissed its negligence claim against Curbmaster and amended its complaint to add a claim against Curbmaster for breach of contract.

Following a bench trial, the trial court issued an opinion and order dated March 14, 1990, awarding $146,811.43 in damages, plus interest, to Moscatiello against PCEC and Curbmaster jointly. Both PCEC and Curbmaster filed timely post-trial motions, and on August 21, 1990, the trial court issued an opinion and order denying Curbmaster's post-trial motions and granting PCEC's post-trial motion only insofar as it related to PCEC's right to indemnification from Curbmaster. PCEC filed this timely appeal from the portion of

the order which denied its post-trial motions.[1]

▪ PCEC first argues that the trial court erred in concluding that the disclaimer of warranties contained in the sales agreement was not conspicuous. PCEC contends that the disclaimer contained in the contract between Moscatiello and itself was a binding and effective disclaimer of all warranty liability, which consequently, precludes Moscatiello's claims of breach of warranties and breach of contract.

Initially, in reviewing a trial court's denial of a motion for judgment n.o.v., we must "accept as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and reject all testimony and inferences to the contrary." *Ingrassia Construction Co., Inc. v. Walsh*, 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984), quoting *Timbrook v. Foremost Ins. Co.*, 324 Pa.Super. 384, 387, 471 A.2d 891, 892–93 (1984). Further, we must reverse an order denying the motion only "when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case." *Timbrook v. Foremost Ins. Co., supra*. Applying this standard to the warranty language contained in the instant sales agreement, we concur with the trial court's determination that PCEC's disclaimer of warranties was inconspicuous and therefore ineffective as a bar to Moscatiello's breach of warranty claims.

Counts three and four of Moscatiello's complaint against PCEC consist of claims for breach of implied warranty of merchantability and for breach of implied warranty of fitness for a particular purpose. The Uniform Commercial Code ("U.C.C.") defines the implied warranty of merchantability as a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used. 13 Pa.C.S.A. § 2314. Comment 11 to this section of the U.C.C. states that this warranty is so commonly taken for granted that its exclu-

---

1. Curbmaster also filed a timely appeal from the order of August 21, 1990, which was docketed at No. 1556 Pittsburgh 1990.

sion from a contract is recognized as a matter threatening surprise and therefore requiring special precaution. Thus, to exclude the implied warranty of merchantability, the exclusionary language must mention the term "merchantability" and be conspicuous. 13 Pa.C.S.A. § 2316(b). As noted in Comment 1 to section 2316(b), this section of the U.C.C. is designed to protect a buyer from unexpected and unbargained for language of disclaimer.

A term or clause is "conspicuous" when it is "so written that a reasonable person against whom it is to operate ought to have noticed it.... Language in the body of a form is conspicuous if it is in larger or other contrasting type or color...." 13 Pa.C.S.A. § 1201. Comment 10 to section 1201 states that the test for conspicuousness is whether attention can reasonably be expected to be called to the exclusions. The primary object of the conspicuousness requirement is to avoid fine print waiver of rights by the buyer. *Greenspun v. American Adhesives, Inc.*, 320 F.Supp. 442 (E.D.Pa.1970).

The exclusionary clause involved herein is located on the reverse side of a standard sales contract. The front of the form contains blank lines in which are typed a customer's name, shipping instructions, detailed description of the machine, price breakdown, and payment terms. All of the information is individually typed on separate lines at least one quarter of an inch wide. Toward the bottom of the form, inside the margins for the price breakdown, is the phrase in capital letters: "TERMS AND CONDITIONS ON REVERSE SIDE ARE AN INTEGRAL PART OF THIS ORDER." Immediately below is a sentence containing the clause, in smaller type, "subject to the provisions hereof and conditions contained on reverse side hereof."

By contrast, the reverse side of the form contains eighteen numbered paragraphs which fill the page, top to bottom and side to side, in extremely small type, approximately one-sixteenth inch in height and one-fourth the size used on the front. The capital letters are slightly larger, but of the same color and in the same type style as the rest of the

printing. The type used on the front of the contract is much larger and bolder than that used on the reverse side. The warranty disclaimer is buried in paragraph number sixteen at the bottom of the page. Though the operative language of the disclaimer is set forth in capital letters, the size of the type of even the capital letters is so minute that it simply does nothing to attract attention to the clause. As Moscatiello aptly observes, "to say that the print is 'fine' is an understatement." Appellee's brief at 12.

■ Upon our review of the agreement, we have no doubt, as the trial court stated, that PCEC's warranty disclaimer "did not adequately put Moscatiello on notice that substantial rights of theirs were being relinquished." Trial court opinion at 5.[2] The disclaimer was set forth in some of the "finest" print this court ever has read. Even the language on the front of the contract referring to terms and conditions on the reverse side of the contract was inconspicuous as well as misleading. The letters are capitalized but are buried in the middle of the contract within the margins of the price breakdown of the goods. In addition, reference is made only to the "terms" and "conditions" on the reverse side rather than to the limitation on warranties and remedies available to the buyer. This language clearly does not meet the letter or the spirit of the U.C.C. requirements.

The evidence during trial was unequivocal that PCEC was fully familiar with the terms of the agreement, having employed it for many years, and had numerous opportunities throughout the purchase negotiations to notify Moscatiello of the exclusion of warranties and the limitation on potential remedies set forth on the reverse side of the contract. It is clear that PCEC failed to take advantage of those opportunities. Instead, as the trial court noted, PCEC

2. While it is true that the location of a disclaimer on the reverse side of a contract alone does not render the disclaimer inconspicuous, the disclaimer itself must be conspicuous *and* the front of the document must contain noticeable reference to the terms on the reverse side. *Jaskey Finance and Leasing v. Display Data Corp.*, 564 F.Supp. 160 (E.D.Pa.1983).

"utilized a boiler-plate provision in a standard sales agreement to exclude important warranties that naturally arise in the course of any sale." Trial court opinion at 5. Section 2316 of the U.C.C. protects buyers such as Moscatiello from this type of disclaimer hidden deep within the illegible fine print on the reverse side of a standard sales contract, and that section invalidates such exclusionary language. Thus, we agree with the trial court's finding that the warranty disclaimer was ineffective, and we find no error in the trial court's decision to allow Moscatiello to pursue its cause of action for breach of implied warranty of merchantability.

■ We also concur with the trial court's finding that PCEC, in fact, did breach its implied warranty of merchantability. Our review of the record in accordance with our standard compels the conclusion that the machine in question could not "pass without objection in the trade under the contract description," nor was it "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. § 2314(b). From the first use of the paver, it failed to lay concrete evenly, which even a lay person would recognize as inadequate for its intended purpose. Further, PennDot's strict requirements regarding its paving were known to PCEC. Testimony during trial established that representatives from PCEC and the manufacturer, Curbmaster, devoted as many as twenty days on site attempting to make the paver perform the functions for which Moscatiello purchased it. They failed, and consequently, the machine was returned. Since the paver never conformed to the contract and obviously was not fit for the ordinary, let alone the specific, purposes for which it was sold, we find no error in the trial court's determination that PCEC breached its implied warranty of merchantability and that Moscatiello was entitled to recover damages from PCEC for that breach.

■ PCEC next argues that the trial court erred in failing to calculate the damages to which Moscatiello was entitled in a manner consistent with the limitation of remedies provision set forth in the sales agreement. Specifically, PCEC contends that Moscatiello is bound by the limita-

tion of remedies provisions in the contract regardless of whether such provisions were conspicuous "inasmuch as any limitation is a term set forth in a contract executed by [Moscatiello]." Appellant's brief at 22. Moscatiello responds that the provisions in the contract which prohibit recovery of incidental and consequential damages are unconscionable, and therefore, the trial court was correct in refusing to enforce those provisions. We concur and consequently, find no error in the trial court's ruling.

Our examination begins with a review of the applicable sections of the U.C.C. Section 2714(c) provides that incidental or consequential damages may be recovered in an action for breach of contract or breach of warranty. 13 Pa.C.S.A. § 2714(c). Consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know ..." 13 Pa.C.S.A. § 2715(b)(1). Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. 13 Pa.C.S.A. § 2719(c). Section 2302 of the U.C.C. allows the court to refuse to enforce the contract as a whole or any single clause or group of clauses if permeated by unconscionability. 13 Pa.C.S.A. § 2302(a). The principle upon which this section rests is one of prevention of oppression and unfair surprise. 13 Pa.C.S.A. § 2302, Comment 1.

The verdict which Moscatiello received from the trial court included the sum of $64,567.93, representing the increased costs it incurred in laying concrete with the defective paver and interest on money borrowed by Moscatiello to purchase the machine. PCEC argues that this portion of the award is erroneous due to the existence of paragraphs seventeen and eighteen in the parties' sales contract which provide the following:

17. If the goods covered by this Order are new, Buyer and Vendor agree that there is no failure of an essential purpose of Buyer's exclusive and limited remedy so long as Vendor is willing and able to repair or replace any part which is not as warranted. If Vendor is not willing and

able to repair or replace any such part or if for any reason it is determined that Buyer's exclusive and limited remedy has failed of its essential purpose, Buyer's sole and exclusive remedy shall then be to have its purchase price returned in exchange for the goods, less a reasonable charge for any use by Buyer.

18. It is agreed that Vendor shall not be liable for any incidental or consequential damages occasioned by the sale, possession, operation, maintenance or use of the goods or for any failure of the goods to operate under any claim of breach of warranty or contract, negligence, strict liability or otherwise.

A clause in a contract is considered unconscionable and unenforceable if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Germantown Manufacturing Co. v. Rawlinson,* 341 Pa.Super. 42, 55, 491 A.2d 138, 145 (1985), quoting E.A. Farnsworth *Contracts* 314 (1982). In *Germantown,* we were asked to determine the enforceability of a confession of judgment clause which was buried, as were the contract provisions at issue here, within the fine print of boilerplate language of a standard form. In finding the clause unenforceable, we were guided by the following analysis contained in section 353 of J. Murray, *Murray on Contracts,* (2d ed., 1974):

Parties to a contract rarely consciously advert to any number of terms which are binding upon them. If such terms allocate the risks of the bargain in a manner which the parties should have reasonably expected, they are enforceable—they are, to use the expression of Karl Llewellyn, decent terms. If the terms of the contract suggest the reallocation of material risks, an attempted reallocation may be so extreme that regardless of apparent and genuine assent, a court will not enforce it.... The parties will not be found to have agreed to an abnormal allocation of risk if the only evidence thereof is an inconspicuous provision on the boilerplate of a stan-

dard form. At a minimum, the reallocation must be physically manifested in a fashion comprehensible to the party against whom it is sought to be enforced. Finally, such party must have had a reasonable choice in relation to such reallocation.

*Germantown Manufacturing Company v. Rawlinson,* 341 Pa.Super. at 56–57, 491 A.2d at 146.

The question presented in the instant sales agreement, therefore, is whether Mr. Moscatiello and his superintendent reasonably should have expected that if the paver failed to perform as promised, they, rather than the seller,. would be responsible for the economic losses which resulted. We cannot agree with appellant that appellee harbored any such expectation.

First, paragraphs seventeen and eighteen of the sales contract are, as appellee aptly states in his brief, "classic examples of physically inconspicuous provisions in the boilerplate of a standard form." Appellee's brief at 21. Neither Mr. Moscatiello nor Mr. Palino understood that buried in the fine print on the reverse side of the contract was a term that shifted to Moscatiello the risk of loss resulting from the purchase of a machine which was unable to perform the operations that it was designed to perform. Neither man was a dealer in concrete-spreader finishers or heavy equipment of any kind. Neither individual had ever dealt with PCEC on any previous occasion, and neither had any knowledge of the standard contracts or business practices of PCEC.

Thus, Moscatiello qualified as neither a merchant, as the term is defined in 13 Pa.C.S.A. § 2104, nor a substantial business concern skilled in the negotiation of sales contracts for goods. It is undisputed that PCEC was both. Courts have upheld limitation of damage provisions in sales contracts between merchants or experienced business concerns because there is no disparity between such entities in either bargaining power or sophistication. *See K & C, Inc. v. Westinghouse Electric Corp.,* 437 Pa. 303, 263 A.2d 390 (1970) (buyers were an experienced attorney and the owner

of a used furniture business who dealt with the renovation and sale of the type of machines being purchased); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3rd Cir.1980) (buyer was a manufacturer of complex electronic equipment who purchased a defective computer system).[3]

Appellant places great reliance on *S. M. Wilson and Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir.1978), in support of its argument that the limitation of damages provisions were reasonable. However, just as in *K & C, Inc.* and *Chatlos*, the parties in *Wilson* held equal bargaining positions as experienced business concerns. Moreover, the limitation of damages provision in *Wilson* was agreed to specifically by the buyer during purchase negotiations between the parties, and the damage provision as well as the warranty disclaimer were conspicuously set forth in the contract between the parties.

Similarly, the limitation of damages provision upheld by the court in *Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951 (9th Cir.1977), also was set forth conspicuously in the contract between the parties. The contract provision at issue in the final case cited by appellant, *FMC Finance Corp. v. Murphree*, 632 F.2d 413 (5th Cir.1980), was a warranty disclaimer rather than a limitation of damage provision and therefore, is inapposite to the facts before us.

The contract provisions at issue in the cases cited by appellant are clearly distinguishable from the provisions contained in the contract between the parties herein. Each contract either involved experienced business concerns holding equal bargaining positions or the provision at issue was displayed in a very conspicuous manner in the contract.

---

**3.** Even in commercial contracts between merchants, courts have recognized that the signer may be theoretically and technically a merchant but functionally a consumer in terms of education, business acumen and experience. The operative factors are the legal expertise of the parties and/or their conscious awareness of the burdens assumed. *See Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D.Mich. 1976).

Appellee was not a dealer or manufacturer of heavy equipment of any kind, and he lacked any prior experience negotiating a contract for the purchase of this type of equipment with PCEC. He had no reason to expect that the contract he signed contained a clause that was buried in the fine print on the reverse side which shifted to him the risk of economic loss resulting from the purchase of a machine which was incapable of performing the job that it was designed to do.

In contrast, PCEC was a well-established dealer engaged in the sale, service, and support of construction equipment to area contractors. It had negotiated many other contracts for the purchase of this type of equipment and was familiar with the "conditions" on the reverse side of its own form which disclaimed warranties and limited damages. PCEC clearly held superior bargaining position with respect to Moscatiello. Moreover, the limitation of damages provisions were classic examples of physically inconspicuous provisions in the boilerplate language of a standard form. Thus, we find the numerous cases cited in appellant's brief inapplicable to the case at bar. Accordingly, we concur with appellee's contention that the limitation of damages provisions contained in its contract with PCEC are unconscionable, and we affirm the trial court's refusal to give effect to those provisions.

■ Appellant next argues that the integration clause contained in the contract between the parties operates as a waiver of appellee's objections to the terms and conditions of the agreement of sale. While we agree that the terms of an integrated agreement may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement, an integration clause cannot validate an unconscionable or otherwise invalid contract provision. The remedies which the trial court afforded appellee were specifically provided to purchasers in the position of appellee by the legislature when it adopted the U.C.C. These remedies cannot be extinguished by the inclusion of an integration clause in a contract which contains invalid provisions.

The fourth error which appellant attributes to the trial court is its failure to find the manufacturer, Curbmaster, directly and solely liable to appellee. Appellant contends that there is no justification for imposing liability on it since its role was limited to a mere seller or conduit in the marketplace for Curbmaster. We disagree.

Appellant cites *Klages v. General Ordnance Equipment Co.*, 240 Pa.Super. 356, 367 A.2d 304 (1976), and *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984), in support of its theory that a seller cannot be held liable for breach of contract or warranty in the sale of defective goods when the manufacturer is a party to the action. Appellant misstates the law. In both *Klages* and *Walasavage*, suit was brought against the seller and the manufacturer of a defective product which caused personal injuries to a consumer. In both cases, the seller was merely a "conduit" in the transaction between the purchaser and the manufacturer. We held that the seller's status as a mere conduit did not relieve it of liability to the purchaser but did entitle it to indemnification from the manufacturer, since the manufacturer was primarily responsible for the defective product.

In the present action, the trial court found that PCEC was a mere "conduit" in the transaction resulting in the sale of the paver to appellee. Our rulings in *Klages* and *Walasavage* do not relieve PCEC of liability to Moscatiello but entitle it to indemnification from Curbmaster, which primarily was responsible for the defective condition of the machine. Accordingly, we find that the trial court correctly ruled that PCEC was liable to Moscatiello for breach of contract and warranties.

Finally, appellant states that upon entry of the trial court's order granting it indemnification from Curbmaster, it filed an assessment of costs against Curbmaster and praeciped for a hearing to determine attorneys' fees. The trial court declined to rule on PCEC's request for fees and costs in light of the filing of the notice of appeal. Appellant now requests that we remand the matter for a determina-

tion of attorneys' fees and costs. We grant appellant's request and remand to the trial court for a determination of attorneys' fees and costs.[4]

Judgment affirmed; appellant's request for assessment of attorneys' fees and costs remanded to the trial court; jurisdiction relinquished.

**4.** We affirmed the trial court's order of August 21, 1990, granting PCEC the right of indemnification from Curbmaster, Inc. in *Moscatiello v. Pittsburgh Contractors Equipment Co.,* 407 Pa.Super. 378, 595 A.2d 1198 (1991).