**BORDEN, INC., Appellee,**

v.

**ADVENT INK COMPANY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 1997.

Filed Sept. 30, 1997.

Robert M. Frankhouser, Jr., Lancaster, for appellant.

Jacques H. Geisenberger, Jr., Lancaster, for appellee.

Before POPOVICH, FORD ELLIOTT, and SAYLOR, JJ.

SAYLOR, Judge.

Plaintiff/appellee, Borden, Inc. ("Borden"), sued defendant/appellant, Advent Ink Company ("Advent"), in the Court of Common Pleas of Lancaster County to recover moneys owed for goods delivered but not paid for. Advent counterclaimed for damages allegedly sustained as a result of a previous shipment of defective goods. The trial court granted Borden's motion for summary judgment on the counterclaim and declared its order to be final pursuant to Pa.R.A.P. 341(c). Concluding that Borden's limitation of damages clause was enforceable, although its disclaimer of warranties was not, we affirm.

Advent, a Pennsylvania corporation, manufactured water-based inks for printers. Among those inks was a black ink that was sold to R.R. Donnelley & Sons Company ("Donnelley") for the printing of its telephone directories. In producing this ink, Advent used a water-based black dispersion, "Aquablak," which it purchased from Borden.

In 1992, Borden sued Advent to recover the sum of $16,227.50 on a book account for merchandise sold and delivered to Advent. In response, Advent asserted that it had rejected the shipments in question because prior shipments had failed to comply with implied warranties of merchantability and fitness for a particular purpose. Specifically, Advent alleged that Borden's failure to age the Aquablak resulted in material defects which, when the Aquablak was incorporated into the black ink, caused the ink to separate and to clog Donnelley's presses. As a result, Donnelley ceased buying water-based black ink from Advent. In its counterclaim Advent argued that it was "entitled to recover from Borden the profits which [it] lost and which [it had] reasonably expected to continue from the Donnelley contract which was cancelled solely as a result of Borden's failure to provide a merchantable black dispersion for use in the black ink."

Late in 1992, Advent filed for bankruptcy under Chapter 11. A stipulation was entered lifting the automatic stay so that Advent could proceed on its counterclaim.

Following discovery, Borden filed a motion for summary judgment on the counterclaim. In its motion Borden argued that it was entitled to summary judgment on either of two bases: first, it had validly and conspicuously disclaimed the implied warranties of merchantability and of fitness for a particular purpose, as it was allowed to do under the Uniform Commercial Code ("UCC"), 13 Pa. C.S.A. § 2316(b), by means of language included in its sales invoices and in labels affixed to each drum of Aquablak that was shipped to Advent; second, by the same means it had validly excluded any liability for consequential damages such as lost profits, as it was allowed to do under section 2719 of the UCC, 13 Pa.C.S.A. § 2719.

By order entered January 2, 1997, the trial court granted Borden's motion for summary judgment and dismissed the counterclaim. In an opinion subsequently filed pursuant to Pa.R.A.P.1925(a), the trial court reasoned that Borden had conspicuously disclaimed the implied warranties of merchantability and fitness for a particular purpose. The court did not address Borden's alternative argument on the limitation of damages.

Borden asked the trial court to amend its order to include "an express determination that an immediate appeal would facilitate resolution of the entire case," Pa.R.A.P. 341(c), thereby making the order final for purposes of appeal. The trial court so amended the order on January 31, 1997, and this appeal followed.

Pursuant to Pennsylvania Rule of Civil Procedure 1035.2, which took effect on July 1, 1996, and is therefore applicable to the present case,

[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

When presented with a challenge to an order granting summary judgment, we view the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038 (1996). Concerning questions of law, our scope of review is plenary. *Id.* We are not bound by a trial court's conclusions of law; instead, we may draw our own inferences and reach our own conclusions. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), *appeal denied*, 546 Pa. 635, 683 A.2d 875 (1996).

In this appeal, Advent contends that summary judgment was not warranted on either of the two grounds advanced by Borden. As to the disclaimer of warranties on the invoices and drum labels, Advent argues that the disclaimer was inoperative because it was inconspicuous.[1] Advent asserts that the limitation of remedies clause was also inoperative because it failed of its essential purpose and was unconscionable. Therefore, Advent ar-

gues, we should vacate the award of summary judgment and allow the case to proceed to trial.[2]

## I. Disclaimer of Warranties

■ In order to resolve Advent's first issue (namely, its challenge to the disclaimer of warranties), we turn first to the pertinent provisions of the UCC as adopted in this Commonwealth. The implied warranty of merchantability, as set forth in the UCC, is "a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used." *Moscatiello v. Pittsburgh Contractors Equipment Company*, 407 Pa.Super. 363, 368, 595 A.2d 1190, 1193 (1991), citing 13 Pa.C.S.A. § 2314, *appeal denied*, 529 Pa. 650, 602 A.2d 860 (1992). Such a warranty "serves to protect buyers from loss where the goods purchased are below commercial standards." *Hornberger v. General Motors Corporation*, 929 F.Supp. 884 (E.D.Pa.1996). The Superior Court has observed that "this warranty is so commonly taken for granted that its exclusion from a contract is recognized as a matter threatening surprise and therefore requiring special precaution." *Moscatiello*, 407 Pa.Super. at 369, 595 A.2d at 1193, citing Comment 11 to 13 Pa.C.S.A. § 2314. The implied warranty that goods shall be fit for a particular purpose exists, under the UCC, where the seller at the time of contracting has reason to know of such purpose and of the buyer's reliance upon the seller's skill or judgment to select or furnish goods that are suitable for such purpose. *See* 13 Pa.C.S.A. § 2315.

The UCC sets forth the following requirements for excluding or modifying these implied warranties:

Subject to subsection (c) [not relevant here], to exclude or modify the implied

---

1. Advent also argues that the disclaimer was not part of its contract with Borden and that, even if the disclaimer were otherwise enforceable, it was inapplicable because the product did not meet Borden's own specifications. Because we agree with Advent that the disclaimer was not conspicuous, we do not address these additional arguments.

2. Advent purports to raise an additional issue: whether Pennsylvania or Ohio law governs the

case. The trial court reasoned that it did not have to decide between the two because both states have adopted the UCC and have interpreted it in a similar manner. Neither Advent nor Borden disputes this conclusion. Advent argues only that if this Court should find it necessary to choose between the law of the two states, it should choose the law of Pennsylvania. We agree with the trial court that such a choice is unnecessary.

warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

13 Pa.C.S.A. § 2316(b). In the present case, the attempted exclusions of both warranties appear in writings, and, as will be shown *infra*, the writings mention merchantability. The question to be decided, therefore, is whether those attempted exclusions are conspicuous. This is a question of law for the court. 13 Pa.C.S.A. § 1201; *Hornberger, supra*; *Jaskey Finance and Leasing v. Display Data Corporation*, 564 F.Supp. 160 (E.D.Pa. 1983); *Thermo King Corporation v. Strick Corporation*, 467 F.Supp. 75 (W.D.Pa.1979), *aff'd*, 609 F.2d 503 (3d Cir.1979).

The UCC provides the following definition of the critical term "conspicuous":

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.

A printed heading in capitals . . . is conspicuous.

Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous.

13 Pa.C.S.A. § 1201. As explained in Comment 10 to Section 1201, the definition of "conspicuous" is "intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it."

█ Under Pennsylvania law, factors to be considered in determining whether a reasonable person should have noticed a warranty disclaimer include: 1) the disclaimer's placement in the document, 2) the size of the disclaimer's print, and 3) whether the dis-

claimer was highlighted by being printed in all capital letters or in a type style or color different from the remainder of the document. *Hornberger*, 929 F.Supp. at 889. The reasonableness test accords with the primary purpose of the conspicuousness requirement, which is "to avoid fine print waiver of rights by the buyer[,]" *Moscatiello*, 407 Pa.Super. at 369, 595 A.2d at 1193.

In the present case, the trial court concluded on the basis of the invoices and drum labels that Borden had met these waiver requirements.[3] On the front of Borden's standard invoice, in red capital letters, is the phrase "SEE REVERSE SIDE." On the reverse side is the heading "CONDITIONS OF SALE," followed by 19 conditions, the first of which is the following:

1. WARRANTIES AND DISCLAIMERS. SELLER MAKE [sic] NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING THE PRODUCT OR THE MERCHANTABILITY OR FITNESS THEREOF FOR ANY PURPOSE, except: (a) that the product shall conform to the Seller's specifications, if any, and (b) that the product does not infringe any valid United States patent. Seller does not warrant, however, that the use of the product or articles made therefrom, either alone or in conjunction with other materials, will not infringe any United States patent.

At the top of the label affixed to each drum of dispersion is the Borden logo. Beneath the logo are two centered lines:

### BORDEN PRINTING INKS

### ZERO DEFECTS: THAT'S OUR GOAL

These are followed by three centered lines, spaced as shown:

### FOR INDUSTRIAL USE ONLY

### EMERGENCY TELEPHONE [NUMBER]

### FOLLOW USE DIRECTIONS FROM BORDEN INC.

Below these lines is the centered heading "**DISCLAIMER**" and the following text:

3. Appellant has included copies of these documents at pages 32a through 34a of the reproduced record.

SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING THE PRODUCT OR THE MERCHANTABILITY OR FITNESS THEREOF FOR ANY PURPOSE OR CONCERNING THE ACCURACY OF ANY INFORMATION PROVIDED BY BORDEN, except that the product shall conform to contracted specifications.... Buyer's exclusive remedy shall be for damages and no claim of any kind, whether as to product delivered or for non-delivery of product, and whether based on contract, breach of warranty, negligence or otherwise shall be greater in amount than the purchase price of the quantity of product in respect of which damages are claimed. In no event shall Seller be liable for incidental or consequential damages....

All of the type on the drum label appears to be boldfaced.

The trial court, reasoning as follows, found that both disclaimers were conspicuous as a matter of law:

The disclaimer on the drums was on the front and center of the drum labels in bold face. The disclaimer is the only paragraph on the drum label. The heading and disclaimer are typed in all capitals, all the rest of the paragraph is not.

Similarly conspicuous, the disclaimer on Borden's invoice appears in the very first paragraph of the "CONDITIONS OF SALE" which is set apart from all other paragraphs and is in all capitals. Although the disclaimer is on the reverse side of the invoice, the front of the invoice states in red type face, "SEE REVERSE SIDE." The red color is in contract [sic] with all surrounding type face.

Relying principally upon this Court's decision in *Moscatiello, supra,* Advent contends that the trial court erred in concluding that the disclaimers were conspicuous. The issue in *Moscatiello* was whether the seller's exclusion of warranties clause, located on the reverse side of a standard sales contract, was conspicuous. The Superior Court analyzed the issue as follows:

The front of the form contains blank lines in which are typed a customer's name, shipping instructions, detailed description of the machine, price breakdown, and payment terms. All of the information is individually typed on separate lines at least one quarter of an inch wide. Toward the bottom of the form, inside the margins for the price breakdown, is the phrase in capital letters: "TERMS AND CONDITIONS ON REVERSE SIDE ARE AN INTEGRAL PART OF THIS ORDER." Immediately below is a sentence containing the clause, in smaller type, "subject to the provisions hereof and conditions contained on reverse side hereof."

By contrast, the reverse side of the form contains eighteen numbered paragraphs which fill the page, top to bottom and side to side, in extremely small type, approximately one-sixteenth inch in height and one-fourth the size used on the front. The capital letters are slightly larger, but of the same color and in the same type style as the rest of the printing. The type used on the front of the contract is much larger and bolder than that used on the reverse side. The warranty disclaimer is buried in paragraph number sixteen at the bottom of the page. Though the operative language of the disclaimer is set forth in capital letters, the size of the type of even the capital letters is so minute that it simply does nothing to attract attention to the clause. As Moscatiello aptly observes, "to say that the print is 'fine' is an understatement." Appellee's brief at 12.

*Id.,* 407 Pa.Super. at 369–70, 595 A.2d at 1193–94.

On the basis of these facts, the Superior Court affirmed the trial court's finding that the disclaimer was not adequate to put the buyer, Moscatiello, on notice that substantial rights were being relinquished. The disclaimer itself, according to the Superior Court, "was set forth in some of the 'finest' print this court ever has read." *Id.,* 407 Pa.Super. at 370, 595 A.2d at 1194. Moreover, the court noted, the language on the front of the invoice, referring to terms and

conditions on the reverse side, suffered from two defects: 1) it was inconspicuous, being buried in the middle of the invoice, and 2) it was misleading, as it referred only to "terms" and "conditions" on the reverse side and not to a limitation of warranties. The court concluded that "[t]his language clearly does not meet the letter or the spirit of the U.C.C. requirements." *Id.* In addition, the court noted that the seller had failed to notify Moscatiello of the exclusion of warranties despite having had numerous opportunities to do so.

■ We agree with Advent that the sales invoice in the present case is equally ineffective as a disclaimer of warranties. Advent asserts, and this court confirms, that the print on the reverse side of the invoice is no larger than one-sixteenth inch in height. All of the type appears to be bold-faced. Although the disclaimer of warranties is the first of nineteen numbered paragraphs, as was not the case in *Moscatiello*, nevertheless there is nothing to indicate that the first paragraph is any more significant than, for example, the seventh ("WEIGHTS") or the tenth ("CARRIER AND ROUTING").

Even more important, the reference on the front of the invoice to the terms on the reverse side is even less informative, albeit more noticeable, than that in *Moscatiello*. The reference in *Moscatiello* at least served to indicate that the terms and conditions on the reverse side of the invoice were an integral part of the order. The reference in the present case simply states "SEE REVERSE SIDE"; there is absolutely no indication that among the terms on the reverse side is an exclusion of warranties, including a warranty (namely, the implied warranty of merchantability) "so commonly taken for granted that its exclusion from a contract is recognized as a matter threatening surprise. . . ." *Id.*, 407 Pa.Super. at 368–69, 595 A.2d at 1193.

In *Moscatiello* the Superior Court observed that "[w]hile ... the location of a disclaimer on the reverse side of a contract alone does not render the disclaimer inconspicuous, the disclaimer itself must be conspicuous *and* the front of the document must contain noticeable reference to the terms on the reverse side." *Id.*, 407 Pa.Super. at 370

n. 2, 595 A.2d at 1194 n. 2 (emphasis in original). If the language in *Moscatiello* lacked "noticeable reference to the terms on the reverse side," so much more pronounced was the lack of such reference in the present case.

According to the trial court, the Superior Court's decision in *Moscatiello* rested, *inter alia*, upon two factors which are not present in this case: 1) the seller was a merchant and a dealer of equipment, while the buyer was neither; and 2) the buyer and the seller had had no previous dealings with each other. As Advent points out, however, the Superior Court did not consider these factors in connection with the exclusion of warranties issue, but rather took them into account in its analysis of the seller's limitation of damages clause. These factors, therefore, do not serve to distinguish *Moscatiello* from the present case. Accordingly, we conclude that the disclaimer stated on Borden's invoice was inconspicuous and, consequently, ineffective.

■ Borden's argument that it disclaimed the warranties at issue therefore rests upon the language appearing on the drum labels. The trial court found this disclaimer to be conspicuous because it appeared "front and center" on the labels, it was boldfaced, it was the only paragraph on the label, and the heading "DISCLAIMER" and the disclaimer itself were printed in capitals, unlike the rest of the paragraph. As Advent points out, however, the disclaimer is printed in very small type. In fact, it appears to this Court that the typeface, like that of the disclaimer on the back of the invoice, is one-sixteenth of an inch high. Moreover, all of the print on the label appears to be boldfaced; thus, the fact that the disclaimer and accompanying paragraph are boldfaced does not make them stand out. Finally, while the heading "DISCLAIMER" and the disclaimer itself are printed in capitals, so too are the preceding lines of text, and they are printed in larger sizes of type. Taking into account all of these factors, we conclude that this disclaimer, like that on the invoice, is inconspicuous and therefore ineffective.

## II. Limitation of Damages

■ Having concluded that Borden failed to disclaim the implied warranties of merchantability and fitness for a particular purpose, we consider whether, as Borden argues, it nevertheless succeeded in excluding its liability for consequential damages such as lost profits. Although the trial court did not address this issue, we may affirm the decision of the trial court if the decision is correct on any ground. *Schreffler v. Pennsylvania Insurance Guaranty Association*, 402 Pa.Super. 309, 586 A.2d 983, *appeal denied*, 528 Pa. 644, 600 A.2d 196 (1991).

■ The applicable provision of the UCC is section 2719, which reads in pertinent part as follows:

(a) **General rule.**—Subject to the provisions of subsections (b) and (c) and of section 2718 [not pertinent here]:

(1) The agreement may provide for remedies in addition to or in substitution for those provided in this division and may limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.

(2) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(b) **Exclusive remedy failing in purpose.**—Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

(c) **Limitation of consequential damages.**—Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

13 Pa.C.S.A. § 2719. Under Pennsylvania law, clauses limiting damages in commercial settings are generally enforced. *New York State Electric & Gas Corporation v. Westinghouse Electric Corporation*, 387 Pa.Super. 537, 564 A.2d 919 (1989) (*en banc*); *Valhal Corporation v. Sullivan Associates, Inc.*, 44 F.3d 195 (3d Cir.1995).

### A. Failure of Essential Purpose

Advent contends, first, that Borden's limitation of damages clause failed of its essential purpose—in other words, that it deprived one party (namely, Advent) of the substantial value of the bargain. *Hornberger, supra; Earl Brace & Sons v. Ciba–Geigy Corporation*, 708 F.Supp. 708 (W.D.Pa.1989). According to Advent, "the defects in the dispersion which caused Advent's ink to separate were not discoverable until the ink, of which the dispersion is a component part, was put to use in Donnelley's presses." At that point, Advent argues, the previously latent defect led to substantial consequential damages in the form of profits lost when Donnelley terminated its relationship with Advent. Advent contends that to limit its damages to the return of the purchase price of the dispersion would be to deprive it of the substantial value of its bargain with Borden.

To support its argument, Advent relies on the decision of the United States District Court for the Western District of Pennsylvania in *Neville Chemical Company v. Union Carbide Corporation*, 294 F.Supp. 649 (W.D.Pa.1968). Neville, the plaintiff in that case, had purchased quantities of an unsaturated oil from the defendant, Union Carbide, and incorporated it into hydrocarbon resins, which it sold to manufacturers of various products such as floor tile, shoe soles, and paint. After receiving complaints from several customers about an unsavory odor that had begun to appear in products manufactured with Neville's resin, Neville investigated the matter and concluded that a change in Union Carbide's processing of the unsaturated oil was responsible for the odor. Accordingly, Neville sued Union Carbide for negligence and breach of express and implied warranties. After finding that Union Carbide had been negligent and had breached the warranties in question, a jury awarded damages to Neville in an amount slightly greater than $2,000,000.

In post-trial motions Union Carbide argued, *inter alia,* that by means of a clause in the parties' contract it had limited its damages to the return of the purchase price. In a ruling relied upon by Advent in the present case, the trial court, applying the provisions of the UCC, held that the clause was ineffective because the defect at issue was latent rather than patent. Union Carbide appealed.

Advent's reliance on the trial court's decision is misplaced because the ruling in question did not survive the appeal. *See Neville Chemical Company v. Union Carbide Corporation,* 422 F.2d 1205, *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). After concluding that the evidence was sufficient to support the jury's findings of negligence and proximate causation, the Court of Appeals for the Third Circuit considered whether Union Carbide, as it asserted, had limited its liability to Neville under the contract. Contracts relieving a party of liability for negligence are not favored by the law, the Court of Appeals noted, and they will not be enforced unless the pertinent language clearly and unequivocally spells out such an intent. The court held that the language of the parties' contract, including the limitation of damages clause, failed to meet this standard. The court rejected Union Carbide's argument that the limitation of damages clause

> meant nothing if it did not limit liability for negligence under these circumstances. The provision could be an attempt to limit damages which occurred in excess of the purchase price as a result of a breach of contract. **Whether it was effective for this purpose is a question we do not have to reach** since the jury specifically found negligence in this case.

*Id.,* 422 F.2d at 1220–21 (citations and footnote omitted; emphasis added). As for the trial court's reliance on 12A P.S. § 2–719, the predecessor statute of section 2719, the Court of Appeals observed that "[t]he rules of [s]ection 2–719 apply to limiting or altering the measure of damages recoverable under the [UCC] and may not be directly applicable to limitation of liability for negligence." *Id.,* 422 F.2d at 1221 n. 25. In other words, the appellate court's decision was not based on the UCC, and the trial court's ruling concerning latent versus patent defects, having been superseded by the appellate court's decision, is no longer the law of the case.

■ Not only does *Neville* not stand for the proposition that the existence of latent defects precludes the enforcement of a limitation of liability clause under the UCC, but in fact case law indicates that a limitation on liability is particularly appropriate in such cases.

> The existence of unknown or undeterminable risks justifies using a limitation and provides a reason for a defendant to offer an exclusive remedy. In such cases, a limited remedy operates exactly as intended and does not fail of its essential purpose.

*Jim Dan, Inc. v. O.M. Scott & Sons, Co.,* 785 F.Supp. 1196, 1199 (W.D.Pa.1992), citing *Posttape Associates v. Eastman Kodak Company,* 450 F.Supp. 407 (E.D.Pa.1978). In *Jim Dan,* the product at issue was a herbicide that caused extensive damage to the plaintiff's golf course. In *Posttape,* it was photographic film that turned out to be commercially worthless due to scratches that appeared during the developing process. In *Hornberger, supra,* it was a newly purchased automobile that required numerous repairs. In each of these cases, it was held that the limitation of damages clause was appropriate to limit the defendant's liability for the plaintiff's damages because the use of the product in question involved latent, unforeseeable risks.

■ Borden argues that the present case is sufficiently similar to warrant the same result. We agree. Borden sold a bulk commodity, the Aqua–Blak dispersion, to Advent. Advent incorporated the bulk commodity into a finished product, black ink, which it then sold to Donnelley. Borden had no control over the process by which Advent manufactured the ink. Under these circumstances, Borden's limitation of damages clause did exactly what it was intended to do: it limited Borden's liability for damages to the cost of the commodity itself and excluded any consequential damages which might result from Advent's use of the commodity. Thus, the clause served its essential purpose, and Ad-

vent's argument to the contrary is without merit.

## B. Unconscionability

Advent also argues that Borden's limitation of damages clause is unconscionable and therefore, pursuant to section 2302 of the UCC, unenforceable.[4] A contractual provision is unconscionable if: 1) one of the parties had no meaningful choice with respect to the provision, and 2) the provision unreasonably favors the other party. *Witmer v. Exxon Corporation,* 495 Pa. 540, 434 A.2d 1222 (1981); *Metalized Ceramics for Electronics, Inc. v. National Ammonia Company,* 444 Pa.Super. 238, 663 A.2d 762 (1995); *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061 (1992); *Moscatiello, supra; Germantown Manufacturing Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985); *Hornberger, supra.* Whether a contractual provision is unconscionable is a question of law for the court. *Denlinger, supra; Hornberger, supra; Jim Dan, supra.* "In determining whether a clause is unconscionable, the court should consider whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances." *Jim Dan,* 785 F.Supp. at 1200, citing 13 Pa.C.S.A. § 2302 Comment 1. The burden of proof lies with the party who alleges unconscionability. *Denlinger, supra.* In commercial settings, a limitation of damages clause will rarely be found unconscionable. *Denlinger, supra; Valhal, supra; Hornberger, supra; Jim Dan, supra.*

Advent asserts that it had no meaningful choice with regard to the limitation of remedies clause "due to [its] inconspicuousness ... on the back of Borden's invoice, and Advent's inexperience in the manufacture and sale of ink products." In addition, Advent maintains that the clause unreasonably favors Borden because "[i]f the dispersion

supplied by Borden is defective, the ink is ruined and Advent bears a risk of loss far greater than the value of the dispersion."

It is beyond dispute that the limitation of remedies clause, appearing on the back of Borden's invoice and on the drum label, was no more conspicuous than the disclaimer of warranties. There is, however, no statutory requirement that a limitation of remedies clause be conspicuous. *Jim Dan, supra.* Although courts have sometimes addressed the issue of conspicuousness in the context of limitation of damages, the Superior Court has observed that unconscionability based on inconspicuously included in a boilerplate form, "is typically found only in consumer cases[,] and courts have exhibited some reluctance to apply it in cases dealing with merchant-to-merchant contracts." *Germantown,* 341 Pa.Super. at 58, 491 A.2d at 146 (footnote omitted). *See Metalized Ceramics, supra* (although clause was not conspicuous, it was not unconscionable; both parties were experienced business entities); *cf. Moscatiello, supra* (clause was inconspicuous and unconscionable; plaintiff was not a merchant or a substantial business concern).

Advent contends that it was inexperienced in the manufacture and sale of ink products, but it has failed to provide us with any facts to support this claim. Moreover, it is settled law that mere unequal bargaining power between the parties to a contract does not render the contract, or a provision thereof, unconscionable. *Witmer, supra; Denlinger, supra; Hornberger, supra; Jim Dan, supra.* "The principle [underlying the concept of unconscionability] is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." Comment 1 to 13 Pa.C.S.A. § 2302 (citation omitted). Accordingly, Advent's claim is without merit.[5]

---

4. "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may: (1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) so limit the application of any unconscionable clause as to

avoid any unconscionable result." 13 Pa.C.S.A. § 2302(a).

5. Having concluded that Advent has failed to demonstrate a lack of meaningful choice with regard to the limitation of damages clause, it is not necessary that we address the second prong

### III. Conclusion

Although Advent has succeeded in demonstrating that Borden's disclaimers of warranties were inconspicuous and thus unenforceable, it has been unable to demonstrate that Borden's limitation of damages clause failed of its essential purpose or was unconscionable. Therefore, the clause is enforceable, and on that basis we affirm the order entering summary judgment in favor of Borden.

Order affirmed.

of the two-part test (namely, whether the clause    unreasonably favors one party over the other).